1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

9

ARTHUR D. RICHARDSON,    )     3:17-cv-00383-MMD-WGC

10          Plaintiff,    )     **REPORT & RECOMMENDATION**

)     **OF U.S. MAGISTRATE JUDGE**

11      vs.    )

12 RENO POLICE DEPARTMENT, *et al.*,   )

13         Defendants.    )

14

15     This Report and Recommendation is made to the Honorable Miranda M. Du, United States

16 District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

17 § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

18     Before the court is Plaintiff's Application to Proceed in Forma Pauperis (IFP) (ECF No. 5) and

19 pro se Complaint (ECF No. 1-1).

20                  **I. IFP APPLICATION**

21     A person may be granted permission to proceed IFP if the person "submits an affidavit that

22 includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees

23 or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and

24 affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d

25 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not

26 just prisoner actions).

27     / / /

28     / / /

In addition, the Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"'[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty.'" *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quoting *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960)). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.,* 335 U.S. 331, 339 (1948).

When a prisoner seeks to proceed without prepaying the filing fee:

> [I]n addition to filing the affidavit filed [as described above], [the prisoner] shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a)(2). Notwithstanding the foregoing:

> (1) … [I]f a prisoner brings a civil action…[IFP], the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of --
> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint of notice of appeal.
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1), (2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months is $52.13, and his average monthly deposits are $119.67.

Plaintiff's application to proceed IFP should be granted. He should be required to pay an initial partial filing fee in the amount of $23.93 (20 percent of $119.67). Thereafter, whenever his prison

account exceeds $10, he should be required to make monthly payments in the amount of twenty percent of the preceding month's income credited to his account until the filing fees are paid.

## II. SCREENING

**A. Standard**

"The court shall dismiss the case at any time if the court determines that … the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This provision applies to all actions filed IFP, whether or not the plaintiff is incarcerated. *See Lopez*, 203 F.3d at 1129; *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

In addition, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or office or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. Thus, when reviewing the adequacy of a complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A(b)(1), the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012). Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

In reviewing the complaint under this standard, the court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff sues the Reno Police Department along with officers Aaron Flickinger, Christopher Good, and Wes Leedy for excessive force during an incident that occurred in a casino parking garage on June 21, 2015. Plaintiff alleges that Defendants had received reports from casino security regarding an altercation involving a firearm nearby. He avers that during their initial approach to confront him, Defendants agreed to utilize a "lethal confrontation" without first attempting a non-lethal confrontation. He contends that they failed to identify themselves as police, and yelled out conflicting instructions. Plaintiff admits that he initially pulled out his weapon to address an unknown threat source, but did not fire a round, and was then shot by Defendants Good and Flickinger eight times, causing him to drop his firearm and begin to fall to the ground. He goes on to allege that at that point, he was shot an additional five times by Defendant Leedy, with three of those shots coming after he was down. Finally, Plaintiff alleges that improper policy and operational procedures "put into practice by the Defendants are unable to pass the reasonableness standard under the Fourth Amendment," mentioning that running up to a suspect without identifying themselves as police left him unsure, confused and scared.

Claims of excessive force during an arrest or other seizure of a free citizen are evaluated under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted); *see also Tennessee v. Garner,* 471 U.S. 1, 7 (1985)

("apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"). The objective reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (citation omitted). These factors are not exhaustive, and courts are "to examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case[.]'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Courts conduct their evaluation of reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

Where an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11. As such, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id*. at 11-12.

While Plaintiff's admissions that the officers had received a report that Plaintiff was armed and that he in fact brandished a gun raise questions about the ultimate viability of the excessive force claim, construing the allegations liberally, as the court must do in reviewing the complaint of a pro se Plaintiff, the court finds that Plaintiff sufficiently alleges a Fourth Amendment excessive force claim. This is because the court construes his allegations as asserting he was shot without adequate warning, and that the second round of shots was unjustified given that he had dropped his gun and attempted to surrender. Therefore, he should be able to proceed with his excessive force claim against Good, Flickinger and Leedy. *See Garner,* 471 U.S. at 11-12; *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2022 (2014) (noting that there might be excessive force were a second round of shots was fired after the initial round incapacitated the suspect and ended any threat of continued flight, or if the suspect had clearly given himself up).

*/ / /*

Insofar as Plaintiff names the Reno Police Department, under Nevada law, "in the absence of statutory authorization, a department of the municipal government may not, in the department name, sue or be sued." *Wayment v. Holmes*, 112 Nev. 232, 237-38, 912 P.2d 816, 819 (Nev. 1996). The City of Reno might be a proper party, but in any event, Plaintiff has not included allegations sufficient to state a colorable claim for municipal liability. "[A] municipality may not be held liable for a § 1983 violation under a theory of respondeat superior for the actions of its subordinates." *Castro v. County of Los Angeles,* 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, "a plaintiff must show that a 'policy or custom' led to plaintiff's injury." *Id*. (citing *Monell*, 436 U.S. at 694). The plaintiff must demonstrate the policy or custom reflects deliberate indifference to constitutional rights. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). Bare bones allegations of municipal liability are insufficient. *Sandoval v. Las Vegas Metropolitan Police Dept.*, 756 F.3d 1154, 1168 (9th Cir. 2014).

Plaintiff does not identify what procedures or operational procedures allegedly resulted in the violation of his rights, other than a passing reference to his allegation that the officers ran up to the suspect without identifying themselves as police. Therefore, the Reno Police Department should be dismissed; however, Plaintiff should be given leave to amend to assert, if possible, a claim against the City of Reno under *Monell*.

## III. RECOMMENDATION

(1) Plaintiff's IFP application (ECF No. 5) should be **GRANTED**; however, Plaintiff should be required to pay an initial partial filing fee in the amount of $23.93. Thereafter, whenever his prison account exceeds $10, he should be required to make monthly payments in the amount of twenty percent of the preceding month's income credited to his account until the filing fee is paid.

(2) The Clerk should be directed to **FILE** the Complaint (ECF No. 1-1).

(3) Plaintiff should be permitted to **PROCEED** with his Fourth Amendment excessive force claims against Good, Flickinger and Leedy.

(4) The Reno Police Department should be **DISMISSED**, but Plaintiff should be given 30 days from the date of any order adopting this Report and Recommendation to file an amended complaint to assert a municipal liability claim under *Monell*.

(5) Service will be addressed once the time period for Plaintiff to file an amended complaint has expired.

DATED: October 26, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE