UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ARTHUR D. RICHARDSON,<br><br>Plaintiff,<br>v.<br><br>RENO POLICE DEPARTMENT, *et al.*,<br><br>Defendants. | Case No. 3:17-cv-00383-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

*Pro se* Plaintiff Arthur D. Richardson ("Richardson") maintains Fourth Amendment excessive force claims under 42 U.S.C. § 1983 against Defendants Aaron Flickinger ("Flickinger"), Christopher Good ("Good"), and Wesley Leedy ("Leedy"). (ECF No. 10 at 1.) Defendants have moved for summary judgment ("Motion"). (ECF No. 57.) For the reasons stated below, the Court will deny the Motion.[1]

**II.    BACKGROUND**

After screening conducted under 28 U.S.C. §§ 1915 and 1915A, the Court permitted Richardson to proceed on his Fourth Amendment excessive force claims against the officers. (ECF Nos. 7, 9.) Richardson's claims arise from an incident that occurred in a casino parking garage. (ECF No. 10.) What follows is undisputed and forms

---

[1]Plaintiff filed two documents apparently for the purpose of opposing a motion for summary judgment even though one had not yet been filed. (ECF Nos. 55, 56.) After Defendants filed the Motion (ECF No. 57), Plaintiff filed a motion to supplement his earlier opposition to summary judgment. (ECF No. 59.) However, Plaintiff then also filed a response to the Motion. (ECF No. 60.) Accordingly, the Court denies Plaintiff's motion to supplement (ECF No. 59) because Plaintiff is seeking to supplement a fugitive document—an opposition to a motion that had not yet been filed. The Court accepts and considers Plaintiff's response (ECF No. 60) as the operative response to the Motion. The Court has also reviewed Defendants' reply. (ECF No. 61.)

the basis of Richardson's excessive force claims.[2] (*Id.* at 2–8.)

On June 21, 2015, Reno Police Department officers received reports that Plaintiff was involved in an incident with a firearm near the Silver Legacy casino ("Silver Legacy") in Reno, Nevada. (*Id.* at 3.) Officers Flickinger, Good, and Leedy located Richardson in the parking garage of the Silver Legacy. (*Id.*) The officers approached Richardson with their weapons drawn. (*Id.* at 6.) Richardson pulled out a gun. (*Id.*) In response, all three officers fired at Richardson. (*Id.*) Richardson was struck multiple times, dropped the gun, and fell to the ground. (*Id.* at 3–4.)

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and

---

[2]The incident was captured on the Silver Legacy's surveillance cameras. Defendants did not offer the video footage ("the Video") with their Motion, although they referenced it. (ECF No. 57 at 3, 5, 7.) It was filed in connection with Defendants' previous motion to dismiss. (ECF No. 15-2.) However, as discussed below, the Court cannot consider this footage on summary judgment because it is inadmissible. *See infra* Section IV. and note 3.

draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV.    DISCUSSION

As an initial matter, Defendants failed to cite to any evidence to support the first three substantive paragraphs in their claimed "Statement of Undisputed Facts." (ECF No. 57 at 2–3.) This defect alone warrants denial of Defendants' Motion. *See* LR 56-1 (providing in pertinent part that motions for summary judgment must include "a concise statement setting forth each fact material to the disposition of the motion that the party claims is or is not genuinely in dispute, citing the particular portions of any pleadings, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies").

Defendants argue that there is no dispute of material facts both because the undisputed evidence does not support a finding of excessive force and because Richardson has not provided evidence in discovery supporting his claim. (ECF No. 57 at 2, 6, 7.) To support this contention, Defendants mostly rely on the same evidence offered in their motion to dismiss. (*Compare* ECF No. 57 at 2–5, *with* ECF No. 32 at 4–6.)

However, as noted in the order denying Defendants' motion to dismiss, the Court may not take judicial notice of much of the evidence offered by Defendants. (ECF No. 32 at 4–6.) Additionally, much of this evidence remains unauthenticated. (*See* ECF Nos. 15-1, 15-2, 15-3, 15-5.) As such, the Court may not consider it on summary judgement.[3] *See Orr*, 285 F.3d at 773 (finding that in ruling on a motion for summary judgment, the Court may not consider unauthenticated documents); *see also* Fed. R. Civ. P. 56(e)).

Additionally, in as much as Defendants argue that Plaintiff has provided no evidence to support the allegations in his Complaint, the Court disagrees. Richardson's Complaint is verified, and he was a witness to these alleged events; accordingly, he may rely on his own verified statements to create a factual dispute. *See Keenan v. Hall,* 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) ("A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence.").

Defendants rely on their characterization of the evidence to seek summary judgment on Plaintiff's excessive force claims. (ECF No. 57 at 7–8.) However, Defendants ignore the verified allegations in the Complaint, asserting that Richardson was shot five times after he dropped his gun and attempted to go to the ground. (ECF No. 10 at 4.) In their Motion, Defendants offered affidavits of two officers' observations of the Video—describing that Defendants ceased firing when Richardson fell. (ECF No. 57-2 at 3, ECF No. 57-3 at 10.) This competing evidence creates a genuine issue of material fact as to whether Defendants continued to fire shots at Richardson after he dropped his gun as he claims.[4] For this reason, the Court denies summary judgment to the extent Defendants

---

[3]The Court will not consider the following evidence: (1) a document titled "Sparks Police Department Officer Involved Shooting Overview" (ECF No. 15-1); (2) the Video of the Silver Legacy parking garage (ECF No. 15-2); (3) a transcript of an interview of Richardson (ECF No. 15-3); and (4) a document titled "Report on the June 21, 2015 Officer Involved Shooting of Arthur Dell Richardson Jr." (ECF No. 15-5).

[4]In their reply, Defendants suggest that Plaintiff's version of the facts are not credible given that he was under the influence of controlled substances. (ECF No. 61 at 2.) However, whether Plaintiff's verified allegations are credible is an issue for the jury, not the Court, to resolve. Moreover, this competing evidence cannot be resolved even if

4

1 | argue that judgment is proper on the merits of the claims.

2 | Defendants further argue that they are entitled to qualified immunity. (ECF No. 57 at 8–10.) The Court conducts a two-step inquiry to determine whether an officer is entitled to qualified immunity. *See, e.g.*, *Groves v. City of Reno*, No. 3:13-cv-00537-MMD-WGC, 2015 WL 5350099, *4 (D. Nev. Sept. 14, 2015). First, the Court decides "whether the facts shown make out a violation of a constitutional right." *Id.* If the Court finds a constitutional violation, the Court then decides "whether the constitutional right was clearly established as of the date of the alleged misconduct." *Id.* (citations omitted). The Court discusses both prongs of the inquiry.

### 1. Whether the Facts Establish a Violation of Richardson's Fourth Amendment Rights

Defendants argue that they did not violate Richardson's constitutional rights because their use of force was reasonable under the circumstances. (ECF No. 57 at 9.) Specifically, Defendants contend that it was reasonable for them to use deadly force because Richardson was a threat to their safety and the safety of others. (*Id.*) Richardson concedes that the officers' initial use of force was reasonable; however, Richardson asserts that he was shot four or five more times after he "dropped his firearm and was in total capitulation". (ECF No. 60 at 2, 3.) The Court finds a genuine issue of material fact exists as to whether Defendants' continued use of force after Plaintiff was on the ground was reasonable under the circumstances.

To determine whether Defendants' use of force was excessive under the Fourth Amendment, the Court assesses "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397 (internal quotation marks omitted). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion

---

the Court were to consider the Video (ECF No. 15-2) because it is not clear from the Video whether the officers ceased firing shots at Plaintiff after he was on the ground.

of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether Richardson posed an immediate threat to the safety of the officers or others; and (3) whether Richardson actively resisted arrest.[5] *Id.; see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 921 (9th Cir. 2001). Additionally, "a police officer may not use deadly force unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (internal quotation marks omitted). However, the Court must also account for the "fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Moreover, the Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside,* 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

Here, Richardson has provided evidence that could lead a rational trier of fact to find that Defendants used excessive force. Richardson offered verified allegations that Leedy fired "three more times even after the Plaintiff was down." (ECF No. 10 at 6.) He asserts that Good and Flickinger "discharged their weapons again as well" and that he

---

[5]While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

1  "was struck an additional five times after dropping his weapon and attempting to
2  surrender." (*Id.*) Viewing all facts and drawing all inferences in favor of Richardson as the
3  non-moving party, a reasonable fact-finder could determine that he was shot after he no
4  longer posed a threat and when he was no longer resisting arrest. As such, the Court
5  finds a genuine issue of material fact exists as to whether Defendants used excessive
6  force against Richardson.

### 2. Was the Fourth Amendment Violation Clearly Established

The second prong of the analysis requires the Court to determine whether the law, as it existed at the time of the incident, was clearly established. "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quotation marks and citation omitted). The Supreme Court has cautioned courts "not [to] define clearly established law at a high level of generality." *Id.* at 742 (citations omitted). Yet, it is "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

Here, the right allegedly violated by Defendants—to be free from the continued use of deadly force after the threat has ended—is clearly established. *See Robinson v. Nolte,* 77 F. App'x. 413, 414 (9th Cir. 2003) (finding that officers violated plaintiff's rights by using deadly force when plaintiff did not pose a risk because "he was lying back on the bed, his arms raised over his head in a classic surrender position, with a gun in his lap"); *Ting v. U.S.,* 927 F.2d 1504, 1510 (9th Cir. 1991) (finding unreasonable the use of deadly force against a suspect who dropped his gun, was surrounded by armed officers, and was "in a prone position or on his hands and knees"); *Tubar v. Clift,* 453 F. Supp. 2d 1252, 1258 (W.D. Wash. 2006) (finding that the continued use of deadly force against plaintiff would be unconstitutional even if plaintiff "merely prove[d] that any danger had subsided by the time [the defendant officer] fired the third shot").

Richardson has provided evidence that he was shot after dropping his weapon, falling to the ground, and attempting to surrender.[6] (ECF No. 10 at 4, 6, 8.) If Richardson's version of the shooting is to be believed, then Defendants may have violated Richardson's clearly established right to be free from the continued use of deadly force after the threat has ended.

In light of the factual dispute as noted herein, the Court is precluded from finding as a matter of law that Defendants' alleged violating conduct was, or was not, inconsistent with clearly established law. *See Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal quotation marks omitted) (finding that "where historical facts material to the qualified immunity determination are in dispute . . . the district court [should] submit the issue to a jury"). Therefore, the Court denies summary judgment on qualified immunity.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' motion for summary judgment is denied. (ECF No. 57.)

It is also ordered that Plaintiff's motion to supplement (ECF No. 59) is denied.

DATED THIS 24th day of February 2020.

                    MIRANDA M. DU
                    CHIEF UNITED STATES DISTRICT JUDGE

---

[6]In contrast, Defendants frame the second-step inquiry based on their version of the facts—that the officers' last shots came simultaneously or almost immediately after Richardson fell to the ground and dropped the gun. (ECF No. 57-2 at 3, ECF No. 57-3 at 10.) Based on these allegations, Defendants argue that the law is clearly established that officers may continue to use force here where Defendants continued to shoot as Plaintiff fell to the ground. (ECF No. 57 at 10.)